UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ERNEST FRANKLYN, and KEVIN MORRISON
Individually and on Behalf of All Other Persons
Similarly Situated,

                    Plaintiffs,

      v.

PEAPOD, LLC, AHOLD U.S.A., INC., and THE
STOP & SHOP SUPERMARKET COMPANY
LLC, Jointly and Severally,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE


No.: 1:14-cv-1912 (AKH)


FIRST AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1.     Plaintiff Ernest Franklyn ("Franklyn") alleges on behalf of himself and other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to (i) unpaid wages from Defendants for overtime work for which they did not receive the lawfully calculated overtime premium pay, as required by law, and (ii) liquidated damages under the FLSA, 29 U.S.C. §§201 *et seq.*

2.     Plaintiffs Franklyn and Kevin Morrison ("Morrison") further complain on behalf of themselves, and a class of other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, that they are entitled to (i) unlawfully retained gratuities under the New York Labor Law ("NYLL") §196-d, and (ii) liquidated damages under the NYLL, as amended by the Wage Theft Prevention Act ("WTPA").

JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs Franklyn and Morrison's state law claims under 28 U.S.C. § 1367.   In addition, the Court has jurisdiction over Plaintiff Franklyn's FLSA claim under 29 U.S.C. § 216(b).

4.      Venue is proper in this district under 28 U.S.C. §1391(b).

5.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

6.      Plaintiff Franklyn was, at all relevant times, an adult individual, residing in Bronx, New York, Bronx County.

7.      Plaintiff Morrison was, at all relevant times, an adult individual, residing in Yonkers, New York, Westchester County.

8.      Upon information and belief, Defendant Ahold U.S.A., Inc. ("Ahold U.S.A.") is a corporation, organized and existing under the laws of the State of Maryland, which is licensed to do business in the State of New York with a principal place of business at 1385 Hancock Street, Quincy, MA 02169.

9.      Upon information and belief, Defendant Ahold U.S.A. is an enterprise engaged in commerce or in the production of goods for commerce.   Defendant Ahold U.S.A. is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00.   These goods and materials that have been produced for

and moved in commerce, which its employees have handled, include, but are not limited to, uniforms Plaintiffs were required to wear, grocery bags and hand trucks.

10.     Upon information and belief, Defendant Peapod, LLC ("Peapod") is a limited liability company, organized and existing under the laws of the State of Delaware, which is licensed to do business in the State of New York with a registered agent for service of process at 80 State Street, Albany, New York 12207.

11.     Upon information and belief, Defendant Peapod is an enterprise engaged in commerce or in the production of goods for commerce.  Defendant Peapod is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00.  These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, uniforms Plaintiffs were required to wear, grocery bags and hand trucks.

12.     Upon information and belief, Defendant The Stop & Shop Supermarket Company LLC ("Stop & Shop") is a limited liability company, organized and existing under the laws of the State of Delaware, which is licensed to do business in the State of New York with a registered agent for service of process at 80 State Street, Albany, New York 12207.

13.     Upon information and belief, Defendant Stop & Shop is an enterprise engaged in commerce or in the production of goods for commerce.  Defendant Stop & Shop is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and

moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, uniforms Plaintiffs were required to wear, grocery bags and hand trucks.

14.     Each Defendant, either directly or indirectly, has hired and fired Plaintiffs Franklyn, Morrison and other employees, supervised and controlled their work schedule and conditions of employment, determined the rate and method of their payment, and kept at least some records regarding their employment.

COLLECTIVE ACTION ALLEGATIONS

15.     Under 29 U.S.C. §207, Plaintiff Franklyn seeks to prosecute his FLSA claim as a collective action on behalf of all persons Defendants employed and are employing as "delivery personnel" in the State of New York and Commonwealth of Massachusetts at any time since March 17, 2008 (the statute of limitations is extended under equitable tolling) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid overtime compensation at the legally required rate for hours worked in excess of forty (40) per workweek (the "Collective Action Members").

16.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, approximately two hundred (200) Collective Action Members exist during the Collective Action Period, most of whom would not be

likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

17.     Plaintiff Franklyn will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law, wage and hour law, and collective action litigation. Plaintiff Franklyn has no interest that is contrary to or in conflict with those members of this collective action.

18.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  No difficulty exists in the management of this action as a collective action.

19.     Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Among the common questions of law and fact common to Plaintiffs Franklyn and other Collective Action Members are:

      a.     whether Defendants employed the Collective Action members within the meaning of the FLSA;

      b.     whether Defendants failed to pay the Collective Action Members overtime compensation at the legally required rate for hours

worked in excess of forty (40) hours per workweek, violating the FLSA and the regulations promulgated thereunder;

c.      whether the service fee counts as wages under the FLSA;

d.      whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

e.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees;

f.      whether Defendants jointly employed the Collective Action Members;

g.      whether Defendants should be enjoined from such violations of the FLSA in the future; and

h.      whether the statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

CLASS ALLEGATIONS

20.     Plaintiffs Franklyn and Morrison sue on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3).

21.     Plaintiffs Franklyn and Morrison bring their NYLL claim on behalf of all persons whom Defendants are employing and have employed as "delivery personnel" in the State of New York at any time since March 17, 2008, to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the NYLL and whose gratuities were unlawfully retained by Defendants, violating the NYLL (the "Rule 23 Class Members").

22.     The Rule 23 Class Members identified above are so numerous that joinder of all members is impracticable.   Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, approximately one hundred (100) Rule 23 Class Members exist during the Class Period.

23.     Plaintiffs Franklyn and Morrison's claims are typical of the claims of the Rule 23 Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

24.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

25.     Plaintiffs Franklyn and Morrison are committed to pursuing this action and have retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

26.     Plaintiffs Franklyn and Morrison have the same interest in this matter as all other members of the class and Plaintiffs Franklyn and Morrison's claims are typical of the Rule 23 Class.

27.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions solely affecting the individual Rule 23 Class Members, including but not limited to:

a.   whether Defendants employed Plaintiffs Franklyn and Morrison and the Rule 23 Class Members within the meaning of the NYLL;

b.   whether the service fee is a gratuity within the meaning of the NYLL;

c.   whether Defendants unlawfully retained Plaintiffs Franklyn, Morrison, and the Rule 23 Class Members' gratuities;

d.   whether Defendants jointly employed Plaintiffs Franklyn, Morrison, and the Rule 23 Class Members;

e.   whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

f.   whether the Defendants should be enjoined from such violations of the NYLL in the future.

<u>STATEMENT OF FACTS</u>

28.   Defendants Stop & Shop and Peapod are an online food and grocery retailer that operates in the State of New York and Commonwealth of Massachusetts, which sells and delivers fruits, vegetables, meat, seafood, deli and cheese products, dairy products, breads, and bakery products.

29.   Defendant Ahold U.S.A. owns and operates two grocery companies:  Stop & Shop and Giant Food.

30.   In August 2001, Defendant Ahold U.S.A. acquired Defendant Peapod.

31.     After this acquisition, Peapod cancelled its contracts with all grocery companies except for Ahold U.S.A.'s two grocery companies, Stop & Shop and Giant Food.

32.     Through Stop & Shop's website (www.stopandshop.com), customers are able to have their groceries delivered via Peapod.

33.     Defendants Peapod and Stop & Shop operate throughout the State of New York, including Long Island, Mamaroneck, Medford, Mount Vernon, New Hyde Park, New York City, Riverhead and South Setauket.

34.     Peapod and Stop & Shop operate throughout the Commonwealth of Massachusetts, including Abington, Boston, The Cape Cod region, Danvers, and Watertown.

35.     To process the deliveries, Defendants Peapod, Stop & Shop and Ahold U.S.A., upon information and belief, share employees and resources.

36.     Defendants Peapod, Stop & Shop and Ahold U.S.A, upon information and belief, jointly made operational decisions regarding the delivery personnel, including make decisions regarding retaining 100% of the service fee.

37.     Defendants employ approximately 200 individuals in the State of New York and the Commonwealth of Massachusetts who are involved in the direct delivery of food and groceries to their customers ("delivery personnel").

38.     When Peapod and Stop & Shop deliver to a customer, the driver will deliver the food and groceries to the customer's door.

39.     When loading and unloading the truck, delivery personnel are not doing so according to specific guidelines, to establish a balanced load or to ensure the safe

operation of the vehicle, but instead do so without exercising judgment or discretion to build a balanced load or to distribute the groceries in such a manner that the safe operation of the trucks are not jeopardized.

40.    Defendants employed Plaintiff Franklyn as delivery personnel from April 2012 to December 7, 2013, and he would deliver food and groceries in Manhattan, Yonkers and Brooklyn.

41.    As delivery personnel, Plaintiff Franklyn normally worked from 2:30 p.m. to 10:30 p.m. four days per week and would occasionally work this eight-hour shift six days per week.  By way of example, he worked six days per week during two weeks in May 2012, during which he worked 48 hours per week.

42.    Defendants paid Plaintiff Franklyn an hourly rate that increased from $11.50 to $12.50.

43.    Defendants employed Plaintiff Morrison as delivery personnel from October 2012 to November 2013, and he would deliver food and groceries in Westchester County and Bronx, New York.

44.    As delivery personnel, Plaintiff Morrison worked from 2:30 p.m. to 10:30 p.m. three days per week.

45.    Defendants paid Plaintiff Morrison an hourly rate that increased from $11.00 to $11.50.

46.    Peapod and Stop & Shop delivery personnel each make between 20 and 25 deliveries per day.

47.     In performing their primary duties as delivery personnel, Plaintiffs Franklyn, Morrison and, upon information and belief, the Rule 23 Class and Collective Action Members did not directly affect the vehicle's safety of operation.

48.     Throughout the time Defendants employed Plaintiffs Franklyn, Morrison and, upon information and belief, both before that time and continuing until today (the Class and Collective Action Period), Defendants have likewise employed other individuals like Plaintiffs Franklyn and Morrison (the Rule 23 Class and Collective Action Members) in positions that required little skill and no capital investment, and their duties and responsibilities did not include any managerial responsibilities, or the exercise of independent judgment.

49.     Peapod and Stop & Shop automatically charge their customers a $6.95 "service fee."

50.     When Peapod and Stop & Shop charge their customers a service fee, the bill separates the service fee from other delivery-related charges (e.g., fuel charge), thereby treating the service fee like a gratuity for sales tax purposes and presumably for income tax purposes as well.

51.     Peapod and Stop & Shop do not explain to their customers, on their website (www.peapod.com) or elsewhere, the purpose of the service fee (e.g., a fuel surcharge, tolls, overhead, etc.) or that they are retaining some or all of the charge. Peapod and Stop & Shop do, however, clearly charge their customers a fuel surcharge, which, upon information and belief, leads Peapod and Stop & Shop's customers to further believe the service fee is a gratuity for the delivery personnel.

52.     Peapod and Stop & Shop's website explain that the service fee is charged to their customers in the State of New York and Commonwealth of Massachusetts.

53.     Defendants retain 100% of the service fees and do not remit any of the service fees to Plaintiffs Franklyn, Morrison and, upon information and belief, the Rule 23 Class and Collective Action Members.

54.     Defendants use the service fees to, upon information and belief, pay for various administrative costs and business expenses.

55.     Peapod and Stop & Shop have directed Plaintiffs Franklyn, Morrison and, upon information and belief, the Rule 23 Class and Collective Action Members not to ask for gratuities from its customers.

56.     Peapod and Stop & Shop's website would have the reasonable customer believe that the "service fee" is a gratuity.

57.     Peapod and Stop & Shop misled their customers into believing the service fee is a gratuity.

58.     On numerous occasions, Peapod and Stop & Shop customers have told Plaintiffs Franklyn and Morrison they thought the "service fee" was their gratuity.

59.     Peapod and Stop & Shop's customers regularly did not give Plaintiffs Franklyn, Morrison and, upon information and belief, the Rule 23 Class and Collective Action Members gratuities because they reasonably believed the delivery personnel were receiving the mandatory service fees as gratuity.

60.     From personal experiences and conversations with other Rule 23 Class and Collective Action Members, Plaintiffs Franklyn and Morrison know that they, like them, infrequently received gratuities directly from the customers.

61.     Upon information and belief, Peapod and Stop & Shop's customers infrequently gave delivery personal gratuities because they believed the automatic service fee was their gratuity.

62.     Defendants thereby accepted and retained gratuities belonging to Plaintiffs Franklyn, Morrison and the Rule 23 Class and Collective Action Members.

63.     As a result of Defendants' acceptance and retention of gratuities belonging to Plaintiffs Franklyn, Morrison and the Rule 23 Class Members, those employees were deprived of gratuities guaranteed to them by the NYLL.

64.     From conversations with other Rule 23 Class and Collective Action Members, Plaintiffs Franklyn and Morrison know that, upon information and belief, Defendants are adhering to the same policies and practices with respect to all delivery personnel.

65.     Defendants Stop & Shop and Peapod's website show that the service fee policy applies uniformly in the State of New York and the Commonwealth of Massachusetts.

66.     A heavy turnover rate exists with delivery personnel: many voluntarily terminate their employment with Defendants or Defendants terminated their employment.

67.     Defendants paid Plaintiffs Franklyn and, upon information and belief, the Rule 23 Class and Collective Action Members an hourly rate for performing their duties and did pay them a one and one-half (1.5) times their regular hourly rate when they worked more than 40 hours in a week.

68.     Defendants, however, failed to include in Plaintiff Franklyn and, upon information and belief, the Collective Action Members' regular rate of pay, upon which their overtime rate would be calculated, their share of the service fee.

69.     By not including the service fees in Plaintiff Franklyn and, upon information and belief, the Collective Action Members' regular hourly rate, Defendants paid them an overtime rate that is less than one and one-half (1.5) times their correct regular hourly rate.

70.     Defendants knew or should have known the gratuities they withheld should have been included when calculating Plaintiff Franklyn and the Collective Action Members' overtime rate.

71.     Defendants treated and classified Plaintiff Franklyn and, upon information and belief, the Rule 23 Class and Collective Action Members as non-exempt for purposes of being entitled to overtime premium pay.

<u>FIRST CAUSE OF ACTION</u>

FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
(Brought on Behalf of Plaintiff Franklyn and the Collective Action Members)

72.     Plaintiff Franklyn repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

73.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff Franklyn and each of the Collective Action Members within the meaning of the FLSA.

-14-

75.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

76.     Plaintiff Franklyn consents in writing to be a party to this action under 29 U.S.C. §216(b).   Plaintiff's written consent is attached hereto and incorporated by reference.

77.     Defendants were required to pay Plaintiff Franklyn and the Collective Action Members no less than one and one-half (1.5) times the regular rate at which they were employed for all hours worked in excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

78.     Federal law counts service charges, like the mandatory service fee, as wages and they must therefore be included in the Collective Action Members' total remuneration for purposes of determining their rate of pay for overtime purposes. *See* 29 C.F.R. 531.60(a).

79.     Defendants had a policy and practice of not including the mandatory service fees in the Collective Action Members' regular rate of pay when calculating their overtime rate.

80.     Defendants had a policy and practice of refusing to pay overtime compensation to their employees at the proper rate.

81.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled for a six-year statute of limitations.

82.     As a result of Defendants' violations of the FLSA, Plaintiff Franklyn and the Collective Action Members have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. § 216(b).

SECOND CAUSE OF ACTION

NEW YORK LABOR LAW – UNLAWFULLY RETAINED GRATUITIES
(Brought on Behalf of Plaintiffs and the Rule 23 Class Members)

83.     Plaintiffs Franklyn and Morrison repeat and reallege each and every allegation of the preceding paragraphs as if fully set forth herein.

84.     Defendants are employers within the meaning of NYLL §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiffs Franklyn, Morrison and the Rule 23 Class Members.

85.     The mandatory service fee is legally a gratuity that belongs to the delivery personnel.  *Samiento v. World Yacht*, 10 N.Y.3d 70, 883 N.E.2d 990, 854 N.Y.S.2d 83 (N.Y. 2008).

86.     Plaintiffs Franklyn, Morrison and the Rule 23 class Members are victims of a uniform and employer-based compensation policy.  On information and belief, this uniform policy that violates the NYLL has been applied and continues to be applied to all delivery personnel in the State of New York.

87.     As a result of Defendants' acceptance and retention of gratuities belonging to Plaintiffs Franklyn, Morrison and the Rule 23 Class members, those employees were deprived of gratuities guaranteed to them by the NYLL.

88.     Defendants have willfully violated NYLL § 196-d by unlawfully retaining the service fees, which are gratuities that should be remitted to the Class Members.

89.     Due to Defendants violations of the NYLL, Plaintiffs Franklyn, Morrison and the Rule 23 Class Members are entitled to recover from Defendants their unlawfully retained gratuities, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs Franklyn and Morrison, on behalf of themselves and the Rule 23 Class and Collective Action Members, respectfully request this Court grant the following relief:

a.     Certification of this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Plaintiffs Franklyn and Morrison and their counsel to represent the Rule 23 Class;

b.     Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff Franklyn and his counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.      An award of unpaid overtime compensation under the FLSA;

f.      An award for all unlawfully retained gratuities under the NYLL;

g.      An award of liquidated damages as a result of the Defendants' willful failure to pay overtime compensation under the FLSA;

h.      An award of liquidated damages as a result of the Defendants' willful and unlawful retention of gratuities under the NYLL;

i.      Equitably tolling the statute of limitations under the FLSA;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs Franklyn and Morrison demand a trial

by jury on all questions of fact the First Amended Complaint raises.


Dated:  New York, New York
        March 27, 2014

                          BRONSON LIPSKY LLP


                          _____
                          Douglas Lipsky (DL-9372)
                          630 Third Avenue, Fifth Floor
                          New York, New York 10017-6705
                          Phone:  212.392.4772
                          Fax:  212.444.1030
                          dl@bronsonlipsky.com

                          Jeffrey M. Gottlieb (JG-7905)
                          nyjg@aol.com
                          Dana L. Gottlieb (DG-6151)
                          danalgottlieb@aol.com
                          GOTTLIEB & ASSOCIATES
                          150 East 18th Street, Suite PHR
                          New York, New York 10003
                          Phone:  212.228.9795
                          Fax:  212.982.6284

                          *Attorneys for Plaintiffs Franklyn and Morrison*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my
name and on my behalf to contest the failure of _Pea Pool, Aldi (DA), the Stop & Shop Supermarket Co._
to pay me overtime wages as required under state and/or federal law and also authorize
the filing of this consent in the action(s) challenging such conduct. I authorize the
representative plaintiffs and designate them class representatives as my agents to make
decisions on my behalf concerning the litigation, the method and manner of conducting
this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys'
fees and costs, and all other matters pertaining to this lawsuit.


_[signature]_                    3-10-14        Kevin Morrison
Signature                         Date          Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _____ *Stop & Shop / peapod / AWA USA, Inc.* to pay me overtime wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          _____
Signature            Date          Print Name   ERNEST FRANKLYN